## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | CRIMINAL ACTION: 2:21-00029-K-B |
| ) | |
| DARICK DWAYNE DILLARD, ) | |
|     Defendant. ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | CRIMINAL ACTION: 2:21-00066-K-B |
| ) | |
| LAMETRIUS DILLARD and ) | |
| DARICK DWAYNE DILLARD, ) | |
|     Defendants. ) | |

**ORDER**

This matter is before the Court on Defendant Darrick Dillard's Fed.R.Crim.P. Rule 29(c)(1) renewed motions for judgment of acquittal (Doc. 47 (CR 2:21-00029-KD-B) and Doc. 106 (CR 2:21-00066-KD-B)), and the Government's Responses (Doc. 54 (CR 2:21-00029-KD-B) and Doc. 114 (CR 2:21-00066-KD-B)).

Rule 29 of the Federal Rules of Criminal Procedure provides the Court with the authority to enter a judgment of acquittal following a guilty verdict. As summarized by the Eleventh Circuit in U.S. v. Willner, 795 F.3d 1297, 1307 (11th Cir. 2015):

> Rule 29(a) requires the district court, on its own or on the defendant's motion after the close of the government's evidence, or after the close of all the evidence, to enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R.Crim. 29(a)...
>
> We resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict and ask whether any reasonable juror could have found ... [the defendant] ... guilty beyond a reasonable doubt. Id. at 1296–97. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." United States v. Kelly, 888 F.2d 732, 740 (11th Cir.1989)....

1

Thus, a Rule 29(c)(1) motion "is a direct challenge to the sufficiency of the evidence presented against the defendant." U.S. v. Aibejeris, 28 F.3d 97, 98 (11th Cir.1994); U.S. v. Ward, 197 F.3d 1076, 1079 (11th Cir.1999). In ruling on such a motion, the Court "'determine[s] whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" U.S. v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997); United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001) (same). The Court also must accept reasonable constructions of the evidence and credibility choices made by the jury. United States v. Sanchez, 722 F.2d 1501, 1505 (11th Cir. 1984). Further, as stated in United States v. Brown, 40 F.3d 1218, 1221-1222 (11th Cir. 1994) (footnote omitted).

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence.

Harris, 20 F.3d at 452 (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc* ).... "If, however, the record reveals a lack of substantial evidence from which a fact-finder could find guilt beyond a reasonable doubt, we must reverse the defendant's conviction." United States v. Harris, 20 F.3d at 452.

I.      **Criminal Action 2:21-00029-KD-B**

In the indictment against him in this case, Darrick Dillard was charged with two (2) counts for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1).  On October 14, 2021, a jury found Dillard guilty on both counts.  (Doc. 51-4 at 1).  Dillard now seeks acquittal of the jury's verdict.

Dillard argues that the evidence at trial failed to prove him guilty and the Government, through its only witness Sarah Turner, failed to present a *prima facie* case whereby he could have

2

been found guilty. Namely, that the Government failed to prove -- via Turner -- who is a convicted felon -- that Dillard knowingly possessed a firearm; that Turner, who allegedly purchased firearms from Dillard did so illegally as a convicted felon prohibited from knowingly possessing a firearm; and that the videos presented at trial never show him in possession of a firearm.

The Court has carefully reviewed the motion and the Government's Response. Upon consideration, the evidence presented in this case was such that, when viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences drawn in its favor, the evidence was sufficient for a jury to find Defendant Dillard guilty beyond a reasonable doubt of possession of the two firearms. Additionally, the Court finds the Government's reasoning sound and adopts same by reference (Doc. 54 (CR 2:21-00029-KD-B). As such, it is **ORDERED** that Defendant Darrick Dillard's motion (Doc. 47 (CR 2:21-00029-KD-B)) is **DENIED**.

## II.    Criminal Action 1:21-00066-KD-B

In the indictment against him in this case, Darrick Dillard was charged with three (3) counts: possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A); and tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). (Doc. 57). On October 14, 2021, a jury found Dillard guilty on all counts. (Doc. 105-1 at 2). Darrick Dillard now seeks acquittal of the jury's verdict.

### A.    Section 841(a)(1)

Darrick Dillard was found guilty of Section 841(a)(1) possession with intent to distribute cocaine. Darrick Dillard argues that the evidence at trial failed to prove the him guilty and the Government, through its witnesses, failed to present a *prima facia* case whereby he could have been found guilty. Specifically, that while the evidence at trial was that he was in possession of

cocaine when he ran from the residence on May 3, 2021, the Government's witnesses testified on cross-examination that law enforcement had not made any controlled buys from Dillard and that drugs are commonly sold in the same form as they were found in the his possession. Additionally, Darrick Dillard argues that the Government's witnesses testified that it was not uncommon for drug users to possess scales for the purposes of weighing drugs they were purchasing. Moreover, during his mirandized statement, he admitted to selling drugs in the past but made no admission regarding the intent to sell the drugs found in the rear of the residence.  As such, per Darrick Dillard, when you take the evidence in the light most favorable to the Government, the evidence was nothing more than mere speculation that the drugs he possessed were intended to be sold by him.

The Court has carefully reviewed the motion and the Government's Response.  Upon consideration, the evidence presented in this case was such that, when viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences drawn in its favor, the evidence was sufficient for a jury to find Darrick Dillard guilty beyond a reasonable doubt with regard to possession with intent to distribute cocaine.  Additionally, the Court finds the Government's reasoning sound and adopts same by reference (Doc. 114 (CR 2:21-00066-KD-B)).

Darrick Dillard also argues that per the Federal Rules of Criminal Procedure and Rule 404(a) of the Federal Rules of Evidence, the jury should have been instructed that "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  However, Dillard has waived this argument by failing to object to the Final Jury Instructions at trial. (Doc. 53-1 at 123).

As such, it is **ORDERED** that Darrick Dillard's motion (Doc. 106 (CR 2:21-00066-KD-B)) is **DENIED** as to this count.

B.      **Section 924(c)(1)(A)**

Darrick Dillard was found guilty of Section 924(c)(1)(A), carrying, using, or possessing a firearm in furtherance of drug trafficking. Darrick Dillard argues that the evidence at trial failed to prove him guilty and the Government, through its witnesses, failed to present a *prima facia* case whereby he could have been found guilty. In support, he asserts that the evidence at trial was that during a secondary protective sweep of the residence that law enforcement located a firearm (a Beretta, model APX, .9mm caliber pistol, serial number AO83822X) under the bed in the bedroom of the residence, but the Government presented no forensic evidence tying him to the Beretta. Rather, per Darrick Dillard, the evidence at trial revealed: law enforcement performed no DNA or Fingerprint testing of the Beretta; at the time of entry into the residence, he was in the living room; an interview of the other occupant of the home did not disclose that he was ever in possession of the firearm; the Government presented no evidence in support of this count; no witnesses testified that they had ever seen him in possession of the Beretta prior to May 3, 2021; and during his mirandized statement, he denied ownership and possession of the firearm.

The Court has carefully reviewed the motion and the Government's Response. Upon consideration, the evidence presented in this case was such that, when viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences drawn in its favor, the evidence was sufficient for the jury to find Darrick Dillard guilty beyond a reasonable doubt with regard to carrying, using, or possessing a firearm in furtherance of drug trafficking. Additionally, the Court finds the Government's reasoning sound and adopts same by reference (Doc. 114 (CR 2:21-00066-KD-B)). As such, it is **ORDERED** that Darrick Dillard's motion (Doc. 106 (CR 2:21-00066-KD-B)) is **DENIED** as to this count.

C.     **Section 1512(b)(1)**

Darrick Dillard was found guilty of 1512(b)(1) tampering with a witness. Specifically, he and his sister Lametrius Dillard were charged with knowingly attempting to intimidate, threaten, and corruptly persuade a witness, victim, or informant known to the Grand Jury, by directing said individual to say that A.H. sold the gun, and threating said individual if he/she did not comply, with the intent to influence the testimony of the individual in an official proceeding. A Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: 1) the person described in the indictment was a witness in this Court; 2) the Defendant used intimidation and/or threats against that person; and (3) the Defendant acted knowingly and intended to influence the witness's testimony. To "intimidate" someone is to intentionally say or do something that would cause an ordinary person to fear bodily harm. To act with intent to "influence" a witness's testimony means to try to get the witness to change or color or shade the witness's testimony in some way.

Darrick Dillard argues that the evidence at trial, including numerous jail conversations between he and Lametrius Dillard, revealed that he did not instruct Lametrius to have contact with Sarah Turner (Turner); he did not instruct Lametrius to make any threats or attempt to intimidate Turner; during the "snitching" discussion he gave no direction to Lametrius to make any threats or attempt to intimidate Turner; and in relation to the Facebook post about Turner, he told Lametrius to post whatever she wanted.  Darrick Dillard argues further that there was no evidence that the witness received any direct threats or intimidation from Darrick Dillard.  From this, Darrick Dillard contests the evidence at trial was sufficient to sustain his conviction of count three.

The evidence regarding witness tampering at trial consisted of the following:

- **A March 4, 2021 jailhouse telephone conversation between Darrick Dillard and Lametrius Dillard** (Doc. 53 at 121-124 (Govt's Ex. D5); Doc. 52 at 44-65) in

which Darrick says: "...I don't know what the hell they got going on. See, that's why I need you to go down to Sara, because I need to see what the hell Sara and them got going on, cause Sara knows I ain't never sold them no gun. I ain't sold — Arthur the one that had that gun. I didn't sell no gun ....Sara must have said I got it. I didn't sell it to her...She know I aint sell her no gun....I did not sell Sara shit.... Sara or somebody's telling lies.... yeah, I need you to go -— go by there and holler at Sara, ask Sara what the hell's going on because I think her son probably got caught with the gun and they probably said that I was...I didn't sell Sara no gun...I need to go and talk to Sara, let her know I ain't sold -- I ain't sold Sara shit.... I ain't have a goddam thing to do with it. Sara know that....So....you need to go there --  you need to go ask her. You need to see. Because that shit ain't gonna fly with me, because Sara know I ain't sold her nothing....Man, I"m in here, I'm laughing like a motherfucker because I know for a fact I didn't sell Sara shit. Arthur the one sold that girl...the goddam gun....I ain't worried about it.... And then talking about with Sara,  you need to go over there and holler at Sara and let her know....Go over there right now, holler at her and let her know...I ain't sold her the gun...Yeah, you need to go over there right now.... Go over there right and call and talk to my cousin, tell Sara and let Sara know. She know I ain't sell it to her.... Go over there, holler at cousin. See what she said. Because let her know that they called, like she's the one saying .....Shit. Yeah, you need to go and holler at Sara right now...Just go on and tell her right now.... So go over -- go over there and holler at cousin, she what she's talking about....I don't know if her son got caught with that gun, but whatever, and Sara told them that they got it from me. They didn't get shit from me....So head over there now and I'll call you back in about 20 minutes...

- **A March 9, 2021 jailhouse telephone conversation between Darrick Dillard and Lametrius Dillard** (Doc. 53 at 126-127, 129-131 (Govt's Ex. D7);) in which Darrick states: "Sarah recorded me twice. Post whatever you want [on Facebook]; Sara is "F'ing up everybody working with the feds[,]" "What Sara[] did was not right."

- **A March 9, 2021 jailhouse telephone conversation between Darrick Dillard and his girlfriend Kayla Jones** in which Darrick states (Doc. 53 at 131 (Govt's Ex. D14); Doc. 53-1 at 11; Doc. 52 at 87-103):" ....Yeah. I –- I couldn't believe Sara did that, when they came to me and showed me the paperwork and shit where she had recorded me for the federal government. She's the one was calling the police on me all the time around there ...sharing that like she's saying that like I got people shooting, I got people on my payroll, he's got people killing.... she said all this shit. ...and she know for a fact that -- it's like all kind of shit... she recorded  me with the gun. All kind of shit, man. she had a body camera on. Yeah. She did that."  Kayla Jones responded: "Kill that bitch. She needs to sit down. Somebody's gonna kill her." In response, Darrick said "Yea, somebody's gonna fuck her ass up."

- **A May 11, 2021 jailhouse telephone conversation between Darrick Dillard and Laquinshia Dillard** in which Darrick states (Doc. 52 at 114): "They already know Puddin's [Lametrius Dillard] my muscle and they just doing that shit, dog. They

just trying to get Puddin out of the way because they can try to just fuck over me...."

- **A May 25, 2021 jailhouse telephone conversation between Darrick Dillard and his daughter Laquinshia Dillard** in which Darrick (Doc. 52 at 130-149) states: "I'm thinking....all this time I'm thinking they talking about something -- the girl turning on me with Sara.... Puddin is –- look, the best thing to do, don't put no shit out there because I'm gonna need that gir1. Do you see what I'm saying? This girl ain't did... shit wrong. Can't tell her how. She told the folks...really, now, do you think I'd uphold a bitch for sending me down the road against my family"...Are you fucking stupid?.... Puddins lying. She went to jail, she scared the fucking girl where I told her to sit her little egg ass down. She should have sat down somewhere — fucking with these folks about them goddam drones and shit. Do you see what I'm saying? And then the folks got mad with her. I'm gonna tell you what they're really mad at her for. Because she got evidence now really for them to throw my case out. Because when she went and got the recording from Sara, and Sara did told them that I did not sell her no gun, the federa1 government got mad and signed a warrant on Puddin saying for harassment on Sara, not no goddam Kayla ain't did no shit. You see what I'm saying...this place here is about Sara and me and Puddin....I'm trying to whip this case with Sara...."

- **Sarah Turner's testimony regarding Lametrius Dillard's visit to her home on March 4, 2020** (Doc. 53-1 at 72-74) at which time Lametrius Dillard told Turner that Darrick Dillard had been arrested and she "wanted me to tell the truth...tell them that he didn't sell me no gun. Arthur Lee sold me a gun[]...I was scared because I knew Arthur was dead. And that's what kind of threw me...I was kind of scared that somebody was going to kill me. And when she stated that...I was petrified then...."

- **A Facebook post by Lametrius Dillard talking about Sarah Turner** (Doc. 53-1 at 75, 77-78; Govt's Tr. Ex. D-9; Doc. 52 at 82) which stated: "How many more people paperwork she's on????? If any of y'all been involved with Sarah Turner, she working for CIS Snitching she have been recording Darick Dillard for 9 months she's all over his paper. Murder Mill that run club 27 it's real she's Working for the Feds th[i]nk it's a joke I have Proof, but God has the last say-so!!!!! Rat[t]ing on people video recording pictures taking be careful out the[re] y'all....she's snitching, posting truth in Jesus name...."

This evidence was sufficient to establish that Darrick Dillard violated § 1512(b)(1) by procuring Lametrius to intimate the witness.  Pursuant to 18 U.S.C. § 2 a person may be "found guilty as a principal for aiding or procuring someone else to commit the offense. It allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided."   United States v. Martin, 747 F.2d 1404, 1407 (11th Cir.

1984)(internal citation omitted).  Specifically, the jury could reasonably have inferred that Darrick Dillard's insistence that Lametrius Dillard remind Sarah Turner that another person sold her the guns and subsequently to out Sarah on Facebook as a snitch, was an effort by Darrick Dillard to intimidate or corruptly persuade Sarah into not testifying that he sold her the guns.  See, United States v. Edlind, 887 F.3d 166, 174 (4th Cir. 2018)( "[C]orrupt persuasion includes situations where a defendant coaches or reminds witnesses by planting misleading facts. *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005)").

**However, aiding and abetting was not charged in the indictment and the jury was not charged on this theory.   United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984) instructs that "[a]iding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it."  The jury was not instructed on the liability theory of aiding and abetting.  Neither party has addressed this issue.  The United States is ORDERED to file a supplemental brief addressing this issue by December 10, 2021.  Defendant's response is due December 17, 2021.**

**DONE** and **ORDERED** this the **30th** day of **November 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**